## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

FEDERATED SERVICE INSURANCE
COMPANY, a Minnesota corporation,

        Plaintiff,                           No. 03-CV-0658 JCH/WDS

vs.

TIRES PLUS, INC., a New Mexico corporation,
FIREMAN'S FUND INSURANCE COMPANY, a
California corporation, CENTRAL MUTUAL
INSURANCE COMPANY, an Ohio corporation, and
EMPLOYERS MUTUAL CASUALTY COMPANY,
an Iowa corporation, and AMERICAN ECONOMY
INSURANCE COMPANY, an Indiana corporation,

        Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Federated Service Insurance Company's

("Federated") Motion for Summary Judgment, filed February 10, 2004 **[Doc. No. 87]**, Defendant

Employers Mutual Casualty Company's ("EMIC") Motion for Summary Judgment as to

Defendant Tires Plus, Inc.'s Cross-Claim, filed March 15, 2004 **[Doc. No. 93]**, and EMIC's

Cross-Motion for Summary Judgment Against Plaintiff Federated Service Insurance Company,

filed March 15, 2005 **[Doc. No. 91]**.   The Court having considered the motions, briefs, and

relevant law, and being otherwise fully informed, finds that Federated's Motion for Summary

Judgment is not well taken and will be denied, EMIC's Motion for Summary Judgment as to Tires

Plus's Cross-Claim is well taken in part and will be granted, and that EMIC's Cross-Motion for

Summary Judgment against Federated is moot and will be denied.

## BACKGROUND[1]

I.    <u>Underlying Lawsuit</u>.

Tires Plus was a defendant ("underlying defendant") in a trademark infringement lawsuit entitled *Team Tires Plus, Ltd. v. Tires Plus*, United States District Court for the District of New Mexico, Civ. No. 01-1124 JP/RLP ("underlying lawsuit").  The plaintiff in the underlying lawsuit, Team Tires Plus, Ltd. ("underlying plaintiff") sued Tires Plus on September 26, 2001, under the federal Lanham Act for (1) federal service mark infringement pursuant to 15 U.S.C. Section 1114, and (2) federal unfair competition pursuant to 15 U.S.C. Section 1125.

The underlying plaintiff alleges in its complaint that (1) it has 554 company-owned or affiliated and franchised locations in various states and that "[it] has current plans to establish one or more TIRES PLUS® retail tire stores and automobile maintenance centers in New Mexico," (2) its predecessor first began using the "TIRES PLUS marks" in interstate commerce in July 1981 and that it registered the "TIRES PLUS marks" with the United States Patent and Trademark Office in May 1983, May 1987 and May 1995, (3) it uses the "TIRES PLUS marks" and licenses the use of the marks and that such use generates "substantial annual revenues," (4) its use of the trademarks has come to be favorably known to the trade and public and has generated "valuable goodwill," (5) the underlying defendant Tires Plus "began using the service mark TIRES PLUS in connection with its retail store and automobile maintenance business in Albuquerque, New Mexico," and that such use was "subsequent to the adoption and first use of the TIRES PLUS marks by [it]," (6) the underlying defendant Tires Plus's service mark is a

---

[1] The following facts are undisputed.

"colorable imitation and counterfeit of [its] TIRES PLUS marks," (7) the underlying defendant's use of the "colorable imitation and counterfeit" has been and is deliberate "for the purpose of giving [its] service[] customer appeal and salability by usurping [its] own reputation and good will, which [the underlying d]efendant's services otherwise would not have," (8) the underlying defendant Tires Plus is "unfairly competing with [the underlying plaintiff] and infringing upon [the plaintiff's] service mark rights," (9) it demanded that the underlying defendant Tires Plus cease and desist from its wrongful use of the trademarks, but the underlying defendant refused to comply, and (10) it suffered "irreparable injury" as a result of the underlying defendant's infringement.

The complaint in the underlying lawsuit does not provide a specific date upon which the alleged injury began.

II.    Federated's and EMIC's Insurance Policies.

Federated issued four commercial general liability policies to Tires Plus covering the period from January 1, 1993, to January 1, 1997.  EMIC issued a commercial general liability policy to Tires Plus covering the period from January 1, 2001, to January 1, 2002.

The Federated and EMIC policies contain the following description of "advertising injury":  "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury . . . .'  We will have the right and duty to defend any 'suit' seeking those damages."

The Federated and EMIC policies further provide, "This insurance applies to . . . '[a]dvertising injury' caused by any offense committed in the course of advertising your goods,

-3-

products, or services."  The Federated and EMIC policies define "advertising injury" as:

> injury arising out of one or more of the following offenses:

>> a.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

>> b.  Oral or written publication of material that violates a person's right of privacy;

>> c.  Misappropriation of advertising ideas or style of doing business; or

>> d.  Infringement of copyright, title or slogan.

EMIC's advertising injury liability coverage contains an exclusion providing that the insurance does not apply to "advertising injury" arising out of oral or written publication materials if the first publication took place before the inception date of the insurance, *i.e.*, January 1, 2001.

III.   Defense of the Underlying Litigation.

Federated defended Tires Plus in the underlying lawsuit pursuant to a reservation of rights. EMIC denied a defense to Tires Plus in the underlying lawsuit.

On May 20, 1994, counsel for Tires Plus Groupe, Ltd. sent Tires Plus a letter indicating that Tires Plus Groupe owned federal service mark registrations for the name "TIRES PLUS," that it believed that Tires Plus was in violation of federal and state law by using the name "Tires Plus," and that Tires Plus should cease and desist from using the service mark "Tires Plus."

On June 28, 1994, Tires Plus's counsel responded to the May 20, 1994, letter, indicating that Tires Plus had begun using the name "Tires Plus," as early as June 11, 1986, prior to Tires Plus Group's registration of the service name, and that Tires Plus therefore would not agree to

cease and desist from using the name "Tires Plus."   Neither Tires Plus nor its counsel received a response to the June 28, 1994, letter.

On August 17, 2001, Tires Plus sent EMIC a "Notice of Occurrence/Claim," indicating that Tires Plus had infringed the underlying plaintiff's intellectual property rights in using the name "Tires Plus."   Tires Plus's president Don Leonard attached to the Notice of Occurrence/Claim copies of letters referring to the May 20, 1994, correspondence from Tires Plus Group's counsel.

Tires Plus was served with the underlying complaint on October 2, 2001.

EMIC's denial of a defense letter dated October 10, 2001, relied in part upon facts beyond the underlying complaint, including the correspondence exchanged between counsel for Tires Plus Groupe and Tires Plus in 1994.

## STANDARD

I.   <u>Summary Judgment</u>.

Summary judgment generally is appropriate when a court determines that "'there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law.'"  *Thrasher v. B & B Chem. Co.*, 2 F.3d 995, 996 (10th Cir. 1993) (citation omitted).  Under Rule 56(c), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.

To carry its initial burden, the moving party need not negate the nonmoving party's claim. *See Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997). "'Instead, the movant only bears the initial burden of 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). A plaintiff cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment but rather must produce some specific factual support of its claim. *See Pueblo v. Neighborhood Health Centers, Inc.*, 847 F.2d 642, 649 (10th Cir. 1988); *Fritzsche v. Albuquerque Municipal Sch. Dist.*, 194 F. Supp. 2d 1194, 1206 (D.N.M. 2002). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Upon a motion for summary judgment, a court "must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence." *Kaus v. Standard Ins. Co.*, 985 F. Supp 1277, 1281 (D. Kan. 1997), *aff'd*, 162 F.3d 1173 (10th Cir. 1998). If there is no genuine issue of material fact in dispute, then a court must next determine whether the movant is entitled to judgment in its favor as a matter of law. *See, e.g.*, *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996); *Celotex*, 477 U.S. at 322.

II.     <u>Duty to Defend</u>.

Under New Mexico law, an insurer's duty to defend an insured is judged by  whether the factual allegations of the underlying complaint arguably or potentially fall within the scope of coverage.  *See, e.g.*, *Am. Gen. Fire & Cas. Co. v. Progressive Cas. Co.*, 110 N.M. 741, 744, 799 P.2d 1113 (N.M. 1990).  Even if the facts alleged in the underlying complaint are not clear, an insurer has a duty to defend if the allegations "simply tend to show an occurrence within the coverage."  *Sena v. Travelers Ins. Co.*, 801 F. Supp. 471, 473 (D.N.M. 1992).  Known but unpleaded extrinsic facts that arguably suggest that an event may be covered can also trigger a duty to defend.  *Am. Gen. Fire & Cas.*, 110 N.M. at 744, 799 P.2d 1113 ("The duty of an insurer to defend arises from the allegations of the complaint or from the known but unpleaded factual basis for the claim that brings it arguably within the scope of coverage.").

**DISCUSSION**

Plaintiff Federated and Defendant EMIC move for summary judgment against Defendant Tires Plus on the ground that they have no duty to defend Tires Plus because the trademark infringement and unfair competition claims alleged against Tires Plus in the underlying lawsuit do not meet the definition of "advertising injury."  In addition, Federated and EMIC maintain that they have no duty to defend Tires Plus because the underlying plaintiff does not allege that it was injured by Tires Plus's advertising activities, *i.e.*, that the advertising injury was caused by Tires Plus's advertising activities.  Defendant EMIC further argues that it has no duty to defend Tires Plus based upon the first publication exclusion contained in the EMIC policy.

In the event the Court concludes that Plaintiff Federated owes Tires Plus a duty to defend

-7-

the underlying lawsuit, Federated moves in the alternative for summary judgment against

Defendant EMIC on the ground that it is entitled to contribution or equitable subrogation from

Defendant EMIC.  Defendant EMIC cross-moves for summary judgment against Federated on the

ground that Federated is entitled only to contribution or equitable subrogation based upon a *pro*

*rata* apportionment of defense costs and fees based upon the relative periods of time that each

insurance coverage was triggered.

The Court will address these arguments in turn.

I.      Federated and EMIC's Motions for Summary Judgment Against Tires Plus.

A.      Coverage.

Plaintiff Federated and Defendant EMIC move for summary judgment against Defendant

Tires Plus on the ground that they have no duty to defend Tires Plus in the underlying lawsuit

because the trademark and unfair competition claims are not a covered "advertising injury" under

the insurers' policies.  In determining whether an underlying complaint triggers a duty on the part

of an insurer to defend under a policy's "advertising injury" provisions, the Tenth Circuit

determines first "whether [a] complaint allege[s] a predicate offense, i.e., one of the offenses

specifically listed in the definition of 'advertising injury,'" and second "whether there was any

causal connection between [the] alleged injuries and [the insured's] advertising activities." *Novell,*

*Inc. v. Fed. Ins. Co.*, 141 F.3d 983, 986 (10th Cir. 1998) (citation omitted).

1.      Predicate Offense.

Tires Plus maintains that the allegations in the underlying complaint trigger two of the four

predicate offenses, namely, misappropriation of an advertising idea and infringement of copyright,

title, or slogan.  Courts have differed considerably over whether trademark infringement constitutes the "misappropriation of advertising ideas."  *Compare State Auto Prop. & Cas. Ins. Co. v. Travelers Indemnity Co*., 343 F.3d 249, 258 (4th Cir. 2003) (holding that trademark infringement constitutes misappropriation of an advertising idea); *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 749 (3d Cir. 1999) ("A trademark can be seen as an 'advertising idea'; It is a way of marking goods so that they will be identified with a particular source."); *CAT Internet Servs., Inc. v. Providence Washington Ins. Co*., 333 F.3d 138, 142 (3d Cir. 2002) (concluding that trademark infringement in connection with marketing and sales and for the purpose of gaining customers constitutes "misappropriation of an advertising idea or style of doing business"); *R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242, 247 (2d Cir. 2002) (holding that trade dress infringement constitutes an "advertising injury" under a version of the standard policy covering injuries arising out of "copying . . . advertising ideas or advertising style"); *Hyman v. Nationwide Mut. Fire Ins. Co*., 304 F.3d 1179, 1189 (11th Cir. 2002) (concluding that trade dress infringement may constitute "misappropriation of advertising ideas or style of doing business"); *with Sport Supply Group, Inc. v. Columbia Cas. Co*., 335 F.3d 453, 463 (5th Cir. 2003) (holding that trademark infringement does not constitute misappropriation of an advertising idea); *Advance Watch Co. v. Kemper Nat'l Ins. Co*., 99 F.3d 795, 802 (6th Cir. 1996) (holding that "'misappropriation of advertising ideas or style of doing business' . . . refers to the unauthorized taking or use of interests other than those which are eligible for protection under statutory or common-law trademark law"); *Callas Enters., Inc. v. Travelers Indemnity Co.*, 193 F.3d 952, 956-57 (8th Cir. 1999) (adopting the conclusion of the Sixth Circuit that

"misappropriation of advertising ideas or style of doing business" does not include trademark infringement).  The Tenth Circuit has not specifically addressed the question whether trademark infringement constitutes "misappropriation of an advertising idea."

In determining whether the underlying complaint alleges facts constituting "misappropriation of advertising ideas," the Court must first decide whether the facts allege "misappropriation."  In *Advance Watch Co. v. Kemper National Insurance Co.*, 99 F.3d 795 (6th Cir. 1996), the Sixth Circuit concluded that trademark infringement did not constitute misappropriation of an advertising idea because "misappropriation" is confined to the "unauthorized taking or use of interests other than those which are eligible for protection under statutory or common-law trademark law."  *Id.* at 802.  The Court rejects this narrow interpretation of the meaning of "misappropriation."   Although New Mexico courts have not had occasion to construe the term "misappropriation" in the context of advertising injury, the majority of courts interpreting the term have concluded that misappropriation refers to wrongful acquisition generally rather than to common law misappropriation only.  *Cf. State Auto*, 343 F.3d at 256; *Hyman*, 304 F.3d at 1189; *Adolfo House Distributing Corp. v. Travelers Property & Cas. Ins. Co.*, 165 F. Supp. 2d 1332, 1340 n.3 (S.D. Fla. 2001).  The Court further notes that the term "misappropriation" is ambiguous:  "Although it could refer specifically to the common law tort of misappropriation, it also could refer more generally to the wrongful acquisition of property."  *State Auto*, 343 F.3d at 257.  The fact that courts are split on this question and that insurance companies have disagreed upon the term's interpretation reinforces the ambiguous nature of the term.  *See id.* (citation omitted).  Because the weight of authority rejects a narrow definition of

"misappropriation" and because the ambiguity in the term must be interpreted in favor of coverage if such an interpretation is reasonable, *Rummel v. Lexington Ins. Co.*, 123 N.M. 752, 759, 945 P.2d 970 (N.M. 1997) (citations omitted), the Court rejects the narrow definition of misappropriation in favor of the general definition.[2]

The Court next considers whether a trademark can constitute an "advertising idea." The New Mexico Supreme Court has stated in a different context that "[i]n common usage, 'to advertise' has a variety of meanings, the broadest being 'to give notice to' or 'to make known to,'" *Midwest Video v. Campbell*, 80 N.M. 116, 118, 452 P.2d 185, 187 (N.M. 1969) (citing Webster's Third New Int'l Dictionary (1961)), and a narrower being "'any form of public announcement *intended* to aid directly or indirectly in the sale of a commodity,'" *id.* (citing Webster's New Int'l Dictionary (2d Ed. 1953)). The New Mexico Supreme Court did not adopt the broader definition, but rather required some intention or purpose to make the activity "advertising." *Id.* at 119, 452 P.2d at 188. Federated maintains that the narrower definition discussed by the court applies here.

The underlying complaint alleges that Tires Plus wrongfully used the underlying plaintiff's service mark "TIRES PLUS," and that Tires Plus did so "for the purpose of giving [Tires Plus's] services customer appeal and salability by usurping [the underlying plaintiff's] own reputation and good will, which [Tires Plus's] services otherwise would not have." Because the underlying

---

[2] Federated does not argue that the proper definition of misappropriation generally refers to the wrongful acquisition of property. Indeed, Federated cites the Fifth Circuit's definition of misappropriation as "the unlawful taking or use of another person's property." Federated's Mem. in Supp. of Mot. for Summ. J. at 10 (citing *Sport Supply*, 335 F.3d 453, 463 (5th Cir. 2003)).

complaint alleges that the trademark infringement occurred for the purpose of increasing the

customer appeal and salability, the complaint necessarily ties the alleged trademark infringement

with Tires Plus's advertising of its services.  The use of the TIRES PLUS mark arguably was a

public announcement intended to aid in the salability of Tires Plus's services.  *Cf. id.* at 118, 452

P.2d at 188 ("to advertise" means a "public announcement intended to aid . . . in the sale of a

commodity").  Because the underlying complaint alleges more than the mere use of proprietary

information but rather alleges facts that implicate advertising, the Court concludes that the

allegations arguably meet the definition of "advertising injury" in the policies.

 The Court also notes that a trademark may itself be an advertising idea.  A trademark

serves at least four distinct functions:  (1) it identifies and distinguishes a seller's goods, (2) it

indicates that all goods bearing the mark derive from the same source, (3) it signifies that all

goods bearing the mark are of the same quality, and (4) it serves as a prime instrument in the

advertisement and sale of the seller's goods.  *State Auto,* 343 F.3d at 257-58 (citing 1 J. Thomas

McCarthy, *McCarthy on Trademarks and Unfair Competition* § 3:2 (4th ed. 2003)); *Lebas*

*Fashion Imports v. ITT Hartford Ins. Group,* 59 Cal. Rptr. 2d 36, 44 (Cal. Ct. App. 1996) ("One

of the basic functions of a trademark is to *advertise* the product or services of the registrant.").

*But see Sport Supply,* 335 F.3d at 460-61 (narrowly construing the purpose of trademarks under

Texas law to include aiding consumers by assuring them that products bearing the mark derive

from the same source and protecting the economic interests of trademark owners).  "A trademark,

by identifying and distinguishing the trademark holder's products, promotes those products to the

public."  *State Auto,* 343 F.3d at 258 n.12 (citation omitted).  "Accordingly, a trademark plays an

important role in advertising a company's products, and a "trademark [therefore] has the potential to be an advertising idea." *Id.* at 258 (citing cases holding that a trademark can qualify as an advertising idea); *see also Frog, Switch*, 193 F.3d at 749 ("A trademark depends for its effectiveness on communicating a message to consumers about the marked good, which is the essence of advertising, and therefore allegations of trademark infringement arguably allege misappropriation of an advertising idea.") (citation omitted).  Although courts are split on the question whether a trademark constitutes an advertising idea, the majority of courts have answered in the affirmative, finding coverage.  Symposium on Insurance and Technology, 54 SMU. L. Rev. 1973, 1994 (2001) ("The vast majority [of courts] have concluded that trademark infringement falls within the meaning of ['misappropriation of advertising ideas']."); *see also State Auto*, 343 F.3d at 256 (trademark infringement is a misappropriation of an advertising idea); *CAT Internet Servs.*, 333 F.3d at 138 (same); *Frog, Switch*, 193 F.3d at 749 (3d Cir. 1999) ("A trademark can be seen as an 'advertising idea'" because "a trademark depends for its effectiveness on communicating a message to consumers about the marked good, which is the essence of advertising"); *Hyman*, 304 F.3d at 1189 (trade dress infringement may constitute a "misappropriation of advertising ideas" because it may extend to marketing techniques and can include certain sales techniques designed to make the product readily identifiable to customers and unique in the marketplace); *R.C. Bigelow*, 287 F.3d at 247 (trade dress infringement constituted copying of advertising ideas or advertising style).[3]  Because the Court concludes that the

---

[3] *But see Sport Supply*, 335 F.3d at 461 (trademark infringement not misappropriation of advertising ideas under Texas law, which defines a trademark as a device intended primarily to identify and distinguish a particular producer's goods); *Advance Watch*, 99 F.3d at 802 (adopting

allegations of the underlying complaint implicate an advertising idea and because it also concludes that a trademark itself may constitute an advertising idea, Federated and EMIC are not entitled to summary judgment on the ground that the allegations of the underlying complaint do not meet the definition "advertising injury" contained in the policies.[4]

Federated's argument that *Novell, Inc. v. Federal Insurance Co.*, 141 F.3d 983 (10th Cir. 1998), controls the outcome of the case does not persuade the Court otherwise. *Novell* did not deal with "misappropriation of advertising ideas" but rather "misappropriation of . . . style of doing business," which courts have defined as a "company's comprehensive manner of operating its business." *Id.* at 986-87. The court recognized the disagreement as to whether trade dress infringement could constitute advertising injury, *see id.* at 987, but declined to determine the Tenth Circuit's position, holding instead that the allegations in the underlying complaint did not

a more narrow definition of "misappropriation" that excludes the unauthorized taking or use of interests other than those which are eligible for protection under statutory or common law trademark law); *Callus Enters.*, 193 F.3d at 956 (endorsing *Advance Watch*).

[4] Tires Plus also maintains that the allegations in the underlying complaint constitute "infringement of copyright, title, or slogan," because "title" can be interpreted to mean the title of a business enterprise. The Sixth Circuit rejected this argument in *ShoLodge, Inc. v. Travelers Indemnity Co.*, 168 F.3d 256 (6th Cir. 1999), explaining that the term "title" is not ambiguous, and that in its ordinary use the word "title" generally refers to the non-copyrightable title of a book, film, or other literary or artistic work. *Id.* at 259. The Eight Circuit has endorsed this holding in *Callas Enters.*, 193 F.3d at 957 (describing "the Sixth Circuit's treatment of this policy language" as "natural, reasonable, and unforced"); *see also Heritage Mut. Ins. Co. v. Advanced Polymer Tech., Inc.*, 97 F. Supp. 2d 913, 923 (S.D. Ind. 2000) ("Moreover, the presence of the word 'title' in the context of 'copyright' and 'slogan' supports the conclusion that title refers unambiguously to the name of a book, film, or other literary or artistic work.") (citations omitted). The Court need not decide this question because the Court already has held that the allegations of the underlying complaint arguably implicate another of the predicate offenses, *i.e.*, misappropriation of an advertising idea.

-14-

implicate the predicate offense of misappropriation of style of doing business.  *Id.*  Accordingly,

*Novell* is not controlling with respect to the question whether the allegations of the underlying

complaint trigger a predicate offense.

2.   <u>Causal Connection Between Alleged Injuries and Advertising Activities</u>.

Having found the existence of a predicate offense, the Court next turns to the causal

connection requirement.  The Tenth Circuit has held that an underlying complaint must allege that

one of the predicate offenses was committed in the course of the insured advertising its goods,

products or services.  *Id.* at 986, 988.  Of the allegations in the underlying complaint raised by

Federated and EMIC in their motions for summary judgment, the following are relevant to the

question of a causal link between the advertising injury and any advertising activities:  (1) Tires

Plus, the underlying defendant, "began using the service mark TIRES PLUS in connection with its

retail store and automobile maintenance business in Albuquerque, New Mexico," and that such

use was "subsequent to the adoption and first use of the TIRES PLUS marks by [the underlying

p]laintiff," (2) Tires Plus's use of the "colorable imitation and counterfeit" of its service mark

"TIRES PLUS" was "for the purpose of giving [Tires Plus] services customer appeal and

salability by usurping [Team Tires Plus's] own reputation and good will, which [the underlying

d]efendant's services otherwise would not have," and (3) Tires Plus is "unfairly competing with

[the underlying p]laintiff and infringing upon [its] service mark rights."

Courts differ in their interpretations of the requirement of a causal connection between the

alleged injuries and advertising activities.  While some courts have construed this requirement

more broadly so that the injury encompasses both the initial infringement and the subsequent

-15-

advertising of the infringing name or product,[5] the Tenth Circuit in *Novell* endorsed a more

narrow interpretation that finds the injury only in the initial infringement and not any subsequent

advertising, *id.* at 988-90 (citing cases holding that initial infringement and not subsequent

advertisement of the infringing product caused the injury, and concluding that no causal

connection existed because the injuries were the direct result of the creation and sale of a

competing product and not the subsequent advertising of that product).  The Second Circuit's

opinion in *R.C. Bigelow, Inc. v. Liberty Mutual Insurance Co.*, 287 F.3d 242, 247-48 (2d Cir.

2002), highlights the distinction.  In *Bigelow*, the court explained that "[s]ome courts have ruled

that the copying of a trademark . . . is the cause of an alleged 'advertising injury,' and have

declined to consider advertising that depicts such copied marks or dress to have 'caused' the

advertising injury." *Id.* at 247 (citing *Advance Watch* and other cases so holding).  "Decisions

such as *Advance Watch* appear to have considered the claim against the insured rather narrowly as

limited to the initial act of copying the claimant's trademark or trade dress, rather than more

broadly as encompassing the continuing creation of consumer confusion by displaying the

allegedly similar mark or dress in advertising."  *Id.* at 247.  The *Bigelow* court rejected the narrow

definition, instead relying upon the broader definition that encompasses the continuing creation of

---

[5] *See, e.g.*, *Bigelow*, 287 F.3d at 248 (finding that there was a causal connection between the alleged trade dress infringement and subsequent advertising activity displaying the infringing trade dress because, if the "copied trade dress created consumer confusion, the ads could be found to have contributed to such confusion"); *State Auto*, 343 F.3d at 259 (cause of advertising injuries was not limited to initial use of infringing mark but rather extended to the "use of the logo on the . . . website" because the "phrase 'in the course of' extends coverage beyond those injuries that resulted from . . . actual advertisements").

consumer confusion by displaying a mark in advertising.  *Id.*  In support of its broader definition,

the court relied upon "[t]he continuing nature of trademark and trade dress torts," which "has

been widely recognized" by other courts.  *Id.* (citing cases).

In *Novell*, the Tenth Circuit adopted a narrow definition of causation confining the cause

of the injury to the initial (direct) infringement of a patent, trade secret, or trade dress and not

expanding the cause to include the subsequent (indirect) advertisement of the infringing product.

141 F.3d at 988-90.  Based upon this definition, the court concluded that the cause of the

insured's injuries was the initial creation and sale of a competing product and not the subsequent

(indirect) advertisement or marketing of the product.  *Id.* at 988.  In support of its decision, the

*Novell* court cited various cases likewise confining the injury to the initial infringement and not

subsequent advertising.  For example, the *Novell* court pointed out that in *Microtec Research,*

*Inc. v. Nationwide Mutual Insurance Co.*, 40 F.3d 968 (9th Cir. 1996), it was the initial

misappropriation of the computer code, and not the marketing of the product containing the code,

that the Ninth Circuit found directly caused the alleged injury.  *Id.* at 989 (discussing *Microtec*, 40

F.3d at 971).  Likewise, in *Simply Fresh Fruit, Inc. v. Continental Insurance Co.*, 94 F.3d 1219

(9th Cir. 1996), it was the initial infringement of a secret automated process for slicing fruit, and

not the subsequent advertisement (*i.e.*, giving tours of the automated processing facilities to

prospective and current customers) of the process, that directly caused the injury, for "'the

*advertising activities* must *cause* the injury--not merely expose it.'"  *Id.* (quoting *Simply Fresh*,

94 F.3d at 1223).  In *Advance Watch Co. v. Kemper National Insurance Co.*, 99 F.3d 795 (5th

Cir. 2003), it was the shape and appearance of the writing instruments themselves which directly

caused the injury, and not the advertising of the writing instruments in a catalog that caused the injury.  *Id.* at 990 (discussing *Advance Watch*, 99 F.3d at 806-07).

Federated and EMIC maintain that the Tenth Circuit's more narrow definition of causation is controlling here and that this definition requires the Court to conclude that Tires Plus's appropriation of the trademark TIRES PLUS, and not its use of the trademark TIRES PLUS in any advertising activities, was the direct cause of the underlying plaintiff's advertising injuries. This reasoning, however, is flawed because the facts of this case are distinguishable from those of *Novell* or to the facts of the cases relied upon by *Novell* (*i.e.*, *Microtec*, *Simply Fresh*, or *Advance Watch*).  Rather, the facts are analogous to of *Sentex Systems, Inc. v. Hartford Accident & Indemnity Co.*, 882 F. Supp. 930, 939 (C.D. Cal. 1995), *aff'd*, 93 F.3d 578 (9th Cir. 1996), also cited by the *Novell* court, in which the district court held that advertising injury was caused by the use of trade secrets to promote and advertise products and not by the appropriation of the trade secrets and confidential information.  *Id.* at 988 (discussing *Sentex*).

In *Sentex*, the insured, Sentex Systems, designed and manufactured telephone entry security systems for buildings and gated communities.  ESSI, a competitor of Sentex, filed suit against Sentex alleging that Sentex misappropriated ESSI's trade secrets and other confidential information, including customer lists, methods of bidding jobs, methods and procedures for billing, marketing techniques, and other inside and confidential information.  *Id.* (describing and citing *Sentex*, 882 F. Supp. at 935).  ESSI further alleged that Sentex used ESSI's trade secrets to promote and advertise Sentex's products and to solicit business from ESSI's customers.  *Id.* Sentex filed suit against Hartford, its general liability insurer, claiming that Hartford breached its

-18-

contract by refusing to tender a defense to the ESSI action.  *Id.*  The district court found a duty to defend, concluding that the offenses alleged by ESSI were committed by Sentex "'in the course of advertising' its products and services.'"  *Id.* (citing *Sentex*, 882 F. Supp. at 989).

The *Novell* court distinguished *Sentex* on the ground that "the underlying litigation contained allegations that Sentex (the insured) had misappropriated various trade secrets . . . from its competitor, and was using those secrets to promote its own competing products.  In short, the alleged misappropriation of trade secrets took place directly (and solely) in the course of Sentex promoting its own products, and thus the alleged injuries flowed directly from Sentex's advertising activities."  *Id.*  The *Novell* court further explained that it was significant that the "'claims for misappropriation of trade secrets relate[d] to marketing and sales and not to secrets relating to the manufacture and production of security systems.'"  *Id.* (quoting *Sentex*, 93 F.3d at 580).

The facts of the present case are similar to those of *Sentex*, and therefore under *Novell*, the Court concludes that the advertising injury was caused directly by Tires Plus's advertising activities.  This is not a case where the allegations of the underlying complaint allege an initial infringing activity and a subsequent advertisement or exposure of that infringing activity.  If the allegations had alleged both an initial (direct) cause of injury and a subsequent (indirect) cause of injury, under *Novell*, the Court would have concluded that the cause of the injury was limited to the initial, direct cause of the injury, *i.e.*, the infringement.  The Court would not have expanded the injury to include the subsequent advertisement of the infringement.  The underlying plaintiff, however, has alleged only one injury:  "the use of the service mark TIRES PLUS" "for the

purpose of giving [Tires Plus's] services customer appeal and salability by usurping [the underlying p]laintiff's own reputation and good will."  This injury necessarily includes both trademark infringement and advertising because the allegations specifically indicate that the infringement was for the very purpose of promoting Tires Plus's services.  Under the allegations of the underlying complaint, the infringement arguably was connected directly to Tires Plus's advertising activities.

In distinguishing *Sentex*, the *Novell* court explained that the "underlying litigation contained allegations that Sentex had misappropriated various trade secrets . . . and was using those secrets to promote its own competing products."  *Id.* at 988 (discussing *Sentex*).  Here, the underlying litigation likewise contained allegations that Tires Plus had misappropriated a trademark and was using the trademark to promote its product by "giving [them] customer appeal and salability."  The *Novell* court noted that in *Sentex*, "the alleged misappropriation of trade secrets took place directly (and solely) in the course of Sentex promoting its own products, and thus the alleged injuries flowed directly from Sentex's advertising activities."  *Id.* (discussing *Sentex*).  Here, arguably, based upon the allegations in the underlying complaint, the alleged misappropriation of trademark likewise took place directly (and solely) in the course of Tires Plus promoting its own products, and the alleged injuries likewise flowed directly from Tires Plus's advertising activities.  Because the facts of this case are analogous to the facts of *Sentex* and not to the facts of *Novell*, *Microtec*, *Simply Fresh*, or *Advance Watch*, the Court concludes that the allegations of the underlying complaint arguably fall within the coverage provisions of Federated and EMIC's policies.  *Cf. Hyman*, 304 F.3d at 1192-94 (overturning district court where district

court found no causal connection on the ground that the mere publication of an advertisement showing an infringing product is insufficient to establish the requisite advertising activity, and holding that a causal connection existed because the infringement was connected directly with the advertising); *see also Sena v. Travelers Ins. Co*., 801 F. Supp. 471, 473, 473 (D.N.M. 1992) (any doubts about coverage must be resolved in favor of the insured).  Accordingly, the Court denies Federated's and EMIC's motions for summary judgment on the ground that they do not have a duty to defend Tires Plus.

      B.    <u>Exclusion</u>.

Defendant EMIC also argues that is entitled to summary judgment against Tires Plus on the ground it has no duty to defend Tires Plus based upon the first publication exclusion contained in the EMIC policy.  The first publication exclusion provides, "This insurance does not apply to . . . "advertising injury" arising out of oral or written publication of material arising out of oral or written publication of material whose first publication took place before the effective date of this insurance."  Under New Mexico law, exclusionary clauses such as the foregoing must be narrowly construed.  *Cf. Knowles v. United Servs. Auto. Ass'n*, 113 N.M. 703, 705, 832 P.2d 394, 396 (N.M. 1992) (citation omitted).

EMIC concedes that the underlying complaint does not specifically allege when the alleged use of the trademark began and that the exclusion therefore does not apply when considering the allegations within the four corners of the complaint.  EMIC maintains, however, that the Court should consider evidence extrinsic to the underlying complaint in determining whether the first publication exclusion applies.  EMIC maintains, and Tires Plus and Federated do

not dispute, that EMIC received copies of correspondence from Tires Plus indicating that the underlying plaintiff Tires Plus Groupe believed Tires Plus was infringing its service mark "TIRES PLUS" in 1994, well before EMIC's policy period began on January 1, 2001.  Specifically, the correspondence indicates that as early as May 20, 1994, Tires Plus Groupe informed Tires Plus that it owned certain federal service mark registrations for the name "TIRES PLUS," that it believed that Tires Plus was in violation of federal and state law by using the name "TIRES PLUS," and that it expected  Tires Plus to cease and desist from using the service mark "TIRES PLUS."  EMIC argues that under *Guaranty National Insurance Co. v. C de Baca*, 120 N.M. 806, 907 P.2d 210 (N.M. 1995), the Court is not required to "play the ostrich," *id.* at 810-11, by "ducking its head into the sand to avoid undisputed facts," EMIC's Reply in Support of Mot. for Summ. J. at 1, that determine whether it is required to defend the underlying litigation.

In response, Tires Plus and Federated cite *Foundation Reserve Insurance Co. v. Mullinex*, in which the New Mexico Supreme Court held that "it is the duty of the insured to undertake the defense even though its own investigation has revealed that the claim sued upon is not in fact covered."[6]  97 N.M. 618, 620, 642 P.2d 604, 606 (N.M. 1982).  Federated further contends that the rule in *C de Baca* applies only when there is a question as to whether there is an insurance policy in existence.  According to Federated, the key question in *C de Baca* was whether there was in fact any insurance policy in existence at the time of the car accident, rather than whether facts outside of the complaint could be used to justify the application of a particular exclusion or

---

[6]  The Court notes, however, that the extrinsic evidence at issue here was provided to EMIC by the insured at the time of its notice to EMIC of the underlying litigation; it was not, as in *Mullinex*, obtained by the insurer through its own independent investigation.

coverage provision.

The Court need not determine whether under New Mexico law *C de Baca* is an exception to *Mullinex* or whether it in effect overruled *Mullinex*, because the Tenth Circuit already has addressed the question whether under New Mexico law a district court can consider evidence extrinsic to the complaint in determining whether an exclusion limits an insurer's duty to defend. In *Valley Improvement Association v. United States Fidelity and Guaranty Corporation*, the Tenth Circuit indicated that "[an insurer's] duty to defend is to be determined by the allegations of the complaint against its insured and the facts actually known to [the insurer] at the time of demand." 129 F.3d 1108, 1117 (10th Cir. 1997). Accordingly, under *Valley Improvement*, the Court should consider the facts actually known to EMIC, and indeed provided to EMIC by the insured, *see supra* note 6, at the time of the demand.

Tires Plus and Federated maintain that even if the Court considers the extrinsic evidence known to EMIC at the time of the demand for a defense, the Court nonetheless should find a duty to defend because an issue of fact exists with respect to whether that extrinsic evidence demonstrates that first publication of the advertising injury occurred outside of the policy period. In support of its argument, Tires Plus maintains that on June 28, 1994, its counsel responded to the May 20, 1994, letter, indicating that Tires Plus had begun using the name "Tires Plus," as early as June 11, 1986, prior to Tires Plus Group's registration of the service name, and that Tires Plus therefore would not agree to cease and desist from using the name "Tires Plus." Tires Plus further maintains that neither it nor its counsel received a return response in contravention of the June 28, 1994, letter. Tires Plus argues that these additional facts raise a question with respect to

-23-

whether the first publication of the advertising injury, *i.e.*, Tires Plus's use of the service name "TIRES PLUS" "for the purpose of giving [its] service[] customer appeal and salability by usurping [its] own reputation and good will," actually occurred in 1994.

The May 20, 1994, letter from the underlying plaintiff's counsel charges Tires Plus with using the mark "TIRES PLUS" to "enhance the status of [its] business" and to "trade on [the underlying plaintiff's] goodwill and reputation." The letter further charges Tires Plus with "marketing, distributing and selling its products and services" under the [underlying plaintiff's] "federally registered service marks." These allegations constitute publication of the same type advertising injury referenced in the underlying complaint--namely, use of the trademark for the purpose of increasing customer appeal and salability and trading on the underlying plaintiff's reputation and goodwill. *Compare Dogloo, Inc. v. N. Ins. Co.*, 907 F. Supp. 1383 (C.D. Cal. 1995) (first publication exclusion did not apply where the court could not conclusively say that any advertising published prior to the policy period caused the same type of injury alleged in the counterclaim). The allegations also indicate that the advertising injury first occurred as early as 1994. Because the language of the letters is not in dispute, the Court concludes that no factual question exists with respect to when the first publication of the advertising injury occurred.

The Court likewise is unpersuaded by Federated's argument that a factual question exists because it is unclear whether Tires Plus or the underlying plaintiff had a superior right to use the service mark "TIRES PLUS," and that EMIC therefore could not use the extrinsic evidence to decide whether it had a duty to defend. The application of the first publication exclusion, however, does not require the Court to conclude who had a superior right to use the service

-24-

mark.  The exclusion simply bars coverage in the event of advertising injury arising out of oral or written publication of material whose fist publication took place before the effective date of the policy.  The only question under this exclusion is whether publication of the trademark for the purpose of increasing Tires Plus's salability first occurred at a time before January 1, 2001.  The Court already has answered that question in the affirmative.

The Court also is not persuaded by the argument that the 1994 letters discuss "use" of a tradename and not "publication" related to "advertising activities."  Federated maintains that there mere "use" of a trademark is not sufficient to constitute "publication of [a] trademark."  The Court already has held, however, that the use of "TIRES PLUS" for the purpose of increasing customer appeal and salability constitutes "advertising injury" "committed in the course of conducting advertising activities.  The Court, therefore, already has rejected Federated's argument that the underlying complaint alleges nothing more than mere use of a trademark.

Because the 1994 correspondence indicates that the first publication of the advertising injury occurred well before the January 1, 2001, policy period, the Court concludes that EMIC did not have a duty to defend Tires Plus.  Accordingly, the Court grants EMIC's motion for summary judgment as to Defendant Tires Plus's cross-claim.[7]

II.   Federated's and EMIC's Cross-Motions for Summary Judgment on Federated's Claim for Contribution or Equitable Subrogation.

Because the Court already has determined that EMIC did not have a duty to defend Tires

---

[7] The Court declines to consider EMIC's argument under the "known loss" or "fortuity" doctrine, raised for the first time in its reply, because the Court already has granted summary judgment in EMIC's favor on alternative grounds.

Plus in the underlying litigation based upon the first publication exclusion, Federated's motion for summary judgment against EMIC on the ground that it is entitled to contribution or equitable subrogation from EMIC is moot.  Defendant EMIC cross-motion for summary judgment against Federated on the ground that Federated is entitled only to contribution or equitable subrogation based upon a *pro rata* apportionment of defense costs and fees likewise is moot.

## CONCLUSION

**IT THEREFORE IS ORDERED** that Federated Service Insurance Company's Motion for Summary Judgment, filed February 10, 2004 **[Doc. No. 87]**, is hereby DENIED as follows:

(1)    Federated's motion for summary judgment against Tires Plus on the ground that it does not have a duty to defend Tires Plus in the underlying lawsuit because the trademark and unfair competition claims are not a covered "advertising injury" under its policies is DENIED; and

(2)    Federated's motion for summary judgment against EMIC on the ground that it is entitled to contribution or equitable subrogation from EMIC is DENIED as moot.

**IT FURTHER IS ORDERED** that Defendant Employers Mutual Casualty Company's Motion for Summary Judgment as to Defendant Tires Plus, Inc.'s Cross-Claim, filed March 15, 2004 **[Doc. No. 93]**, is hereby GRANTED as follows:

(1)    EMIC's motion for summary judgment against Tires Plus on the ground that it does not have a duty to defend Tires Plus in the underlying lawsuit because the trademark and unfair competition claims are not a covered "advertising injury" under its policies is DENIED; and

(2)    EMIC's motion for summary judgment against Tires Plus on the ground that it has no duty to defend Tires Plus in the underlying lawsuit because the first publication exclusion

contained in the EMIC policy applies is GRANTED; Tires Plus's cross-claim against EMIC for breach of contract, bad faith, violation of the New Mexico Insurance Code, and violation of the New Mexico Unfair Practices Act is dismissed with prejudice.

**IT ALSO IS ORDERED** that Employers Mutual Casualty Company's Cross-Motion for Summary Judgment Against Plaintiff Federated Service Insurance Company, filed March 15, 2005 **[Doc. No. 91]**, on the ground that Federated is entitled only to contribution or equitable subrogation based upon a *pro rata* apportionment of defense costs and fees based upon the relative periods of time that each insurance coverage was triggered is hereby DENIED as moot.

Dated this 25th day of September 2006.

JUDITH C. HERRERA
UNITED STATES DISTRICT JUDGE